Gary Adelman, Esq.
MEISTER SEELIG & FEIN LLP
2 Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3580 (phone)
gpa@msf-law.com (e-mail)
*Attorneys for Sandman Table Tennis, LLC
And Liquidity Works, Inc*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SANDMAN TABLE TENNIS, LLC

        Plaintiff/Counterclaim Defendant,

        v.

INTERNATIONAL TABLE TENNIS
FEDERATION

        Defendant/Counterclaim Plaintiff,

        v.

LIQUIDITY WORKS, INC.,

        Counterclaim-Defendant.
-------------------------------------------------------------X

**Case No. 11 CIV 1069 (KBF)**

## DECLARATION OF GARY ADELMAN IN OPPOSITION TO INTERNATIONAL TABLE TENNIS FEDERATION'S MOTION FOR SUMMARY JUDGMENT

GARY ADELMAN, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury, as follows:

1.    I am a partner at the law firm of Meister, Seelig & Fein LLP, attorneys for Sandman Table Tennis, LLC ("Sandman") and Liquidity Works, Inc, ("Liquidity"). As

such, I am fully familiar with the facts and circumstances herein based upon my personal handling of the file.

2. I make this affirmation in opposition to International Table Tennis Federation's ("ITTF") motion for summary judgment.

3. ITTF's motion should be denied by this Court because Sandman and Liquidity cannot present facts essential to justify much of their opposition because Sandman and Liquidity have been denied the opportunity to take discovery prior to having to oppose the instant motion.

4. Sandman commenced this action on February 16, 2011 by filing of the Complaint. Service on ITTF through the Hague Convention was not completed until April 14, 2011, making ITTF's answer due on May 5, 2011. Following ITTF's receipt of the complaint in this action, ITTF's counsel requested a thirty (30) day extension of time to respond to the complaint, which Sandman granted as a courtesy. The parties then engaged in settlement negotiations which were ultimately unsuccessful.

5. During the pendency of settlement negotiations in May and June of 2011, the parties requested a second thirty (30) day extension of time to answer, which was granted by the Court.

6. On or about July 7, 2011 ITTF filed its Answer and Counterclaims.

7. On or about July 11, 2011, the Sandman and ITTF jointly submitted a Proposed Scheduling Order to the Court, which was so ordered by the Court on July 19, 2011. A true and correct copy of the July 19, 2011 Scheduling order is annexed hereto as Exhibit "1".

8. Shortly, less than three (3) weeks, thereafter, on August 5, 2011, ITTF requested permission to make their motion for summary judgment on the grounds that it was their belief the claims could be resolved on summary judgment without discovery. The Court granted ITTF's request for a pre-motion conference and specifically stated that the parties would address whether discovery was necessary on the anticipated motion at that conference. A true and correct copy of the August 11, 2011 endorsed letter is annexed hereto as Exhibit "2".

9. On September 30, 2011 at the pre-motion conference Sandman outlined the discovery it would seek that would be necessary to oppose a motion for summary judgment. The Court specifically ruled at this Conference that discovery was not stayed.

10. On October 5, 2011, Sandman served its First Set of Interrogatories ("First Interrogatories"), its First Set of Demands for Documents and Things ("First Demands"), and a Notice of Deposition upon ITTF. A true and correct copy of Sandman's First Set of Interrogatories is annexed hereto as Exhibit "3". A true and correct copy of Sandman's First Set of Demands for Documents and Things is annexed hereto as Exhibit "4." A true and correct copy of Sandman's 30(b)(6) Notice of Deposition is annexed hereto as Exhibit "5." Responses and objections, if any, were originally due on November 7, 2011. Additionally, ITTF's deposition was noticed for November 4, 2011.

11. By virtue of Sandman's First Interrogatories, First Demands and Notice of Deposition, Sandman sought documents, interrogatory answers, and testimony that would allow it to defeat ITTF's motion for summary judgment, and to ultimately prevail on its own claims.

12. Specifically Sandman sought *inter alia* to gather evidence and facts, by way of interrogatories document demands and deposition testimony in connection with:

    a. The circumstances under which ITTF became aware of Sandman's event, ITTF's communications with players and other third parties that could constitute tortuous interference with Sandman's contracts, ITTF's understanding of the alleged "Renaming Agreement";

    b. A specific delineation of the marks ITTF alleges to own in, the classes and goods of services it alleges to own rights in, and information concerning use, including first use and evidence of continued use, in commerce in the United States and in New York;

    c. ITTF's efforts to advertise and promote its events, including information about geographic scope of advertising and promotion;

    d. Locations of persons who visit ITTF's website;

    e. ITTF's awareness of any other marks or trade names that contain "WORLD" and "CHAMPIONSHIP";

    f. ITTF's efforts to police its alleged marks;

    g. ITTF's assignment, or instances where ITTF has licensed its alleged marks;

    h. ITTF's efforts to manage and/or ensure quality control over its alleged marks;

    i. Specific instances of use of ITTF's alleged marks, including specimens of use for all of the alleged marks;

j. Advertising and promotion expenditures for goods and services provided under ITTF's alleged marks;

k. The class of buyer and/or consumer to whom ITTF markets, advertises, promotes and/or provides services to;

l. Unsolicited media coverage of services provided under ITTF's alleged marks;

m. Other evidence that supports ITTF's assertion that that the use of "WORLD" in connection with "CHAMPIONSHIP," as associated with ITTF, is widely known throughout the United States, and/or other evidence that ITTF's alleged marks have acquired secondary meaning in the United States and in New York;

n. Documents and communications that evidence the actual confusion that ITTF has alleged resulted from Sandman's use of "WORLD CHAMPIONSHIP OF PING PONG";

o. The alleged distribution agreement between ITTF and Universal sports, including statistical information about viewers who watch ITTF's events;

p. Plans for expansion, if any, of ITTF's services;

q. Evidence of ITTF's allegation that "table tennis" and "ping pong" are indistinguishable and used interchangeably; and

r. Injury, damage and proof of irreparable harm, including evidence of alleged impact on the public that ITTF' alleges Sandman's conduct has caused.

*See* Exs. 3, 4 and 5, annexed hereto.

13. The above would allow Sandman to demonstrate that there are genuine issues of material fact as follows:

    a. Discovery demands concerning use of the mark is highly relevant to demonstrating that there is a genuine issue of material fact as to the validity of ITTF's alleged marks. As outlined at length in the accompanying memorandum of law, use of a mark in commerce is a prerequisite to protection under the Lanham Act and New York law. Additionally, to the extent the marks have ever been used in the United States and/or New York, non-use could constitute abandonment and ITTF would no longer have valid marks.

    b. Discovery demands related to advertising expenditures, consumer studies linking ITTF's alleged marks to ITTF, unsolicited media coverage, sales success, viewership data, marketing expenses, attempts to plagiarize the mark, and length and exclusivity of the alleged marks' use are necessary to create a genuine issue of material fact as to whether ITTF's alleged marks have acquired secondary meaning and/or good will in New York, and thus whether they are entitled to protection under the Lanham Act and/or New York law.

    c. Some of the above information in ¶13(b) is also relevant to the issue of likelihood of confusion and/or dilution. Also relevant to creating genuine issues of material fact as to these issues are the requests concerning the nature and plans for expansion of ITTF's services, evidence of actual confusion that ITTF has alleged and the consumer base to which ITTF markets and provides its services.

       d.     Discovery related to ITTF's actions and communications in early February of 2011, are necessary for Sandman to establish its duress claim.

       e.     Lastly the discovery related to injury, damages and irreparable harm, including evidence of impact on the public is necessary for Sandman to defend itself against all of ITTF's claims, including deceptive acts and practices under New York Law.

      14.     After the above described discovery was requested by Sandman, the Court issued the October 24, 2011 Amended Scheduling Order, setting forth the briefing schedule for the instant motion and ordering Sandman and ITTF to meet and confer regarding the desirability of limited discovery by November 21, 2011 and advise the Court by November 22, 2011 of the results of the meet and confer. A true and correct copy of the October 24, 2011 Amended Scheduling Order is annexed hereto as Exhibit "6".

      15.     Upon ITTF's request, and in anticipation of the meet and confer that the parties had scheduled for November 7, 2011, Sandman agreed to extend ITTF's time to serve responses and objections to the First Interrogatories and First Demands to November 14, 2011. Sandman further agreed to adjourn the deposition of ITTF to after the meet and confer on November 7, 2011, to a date that was mutually agreed to.

      16.     On November 14, 2011, ITTF requested a pre-motion conference to make a motion to stay discovery in this action. Sandman opposed this request by letter dated November 16, 2011. A true and correct copy of Sandman's November 16, 2011 letter is annexed hereto as Exhibit "7". The November 16, 2011 letter also specifically delineates the discovery requested by Sandman and the importance of obtaining said discovery in

connection with the legal issues that Sandman would need to address to properly oppose ITTF's motion for summary judgment.

17. The Court denied ITTF's request and again declined to stay discovery by Order dated December 9, 2011. A true and correct copy of the December 9, 2011 Order is annexed hereto as Exhibit "8."

18. On December 19, 2011, having not received an responses, Sandman wrote to ITTF again requesting the documents and informing them that if full and complete responses were not produced forthwith, Sandman would seek the appropriate permission to compel responses from the Court.

19. On December 20, 2011 Sandman received Responses and Objections to Sandman's First Set of Demands and Objection in Lieu of Response to Sandman's First Set Of Interrogatories. A true and correct copy of ITTF's Responses and Objections to Sandman's First Set of Demands is annexed hereto as Exhibit "9" and a true and correct copy of ITTF's Objection in Lieu of Response to Sandman's First Set Of Interrogatories is annexed hereto as Exhibit "10".

20. ITTF's Responses and Objections to Sandman's First Set of Demands were not served with any accompanying documents. Instead ITTF's responses referred Sandman to its instant motion and represented that ITTF would produce additional documents in its possession custody or control. To date, no additional documents have been produced, no responses to Sandman's interrogatories have been provided and ITTF has not produced a 30(b)(6) witness for deposition.

21. Short of formal motion practice, Sandman has made every possible effort to obtain responses to its First Interrogatories, First Demands and the deposition of ITTF.

However despite two (2) orders from this Court declining to stay discovery, ITTF has refused to participate in discovery. As mentioned above, Sandman plans to make a request to formally compel responses from ITTF given their failure to participate in discovery. Sandman's lack of success in obtaining the requested discovery is no fault of its own, but is the direct result of ITTF's refusal to participate in discovery.

22. Liquidity has also not been given an opportunity to conduct any discovery in this action. ITTF served Liquidity on October 18, 2011. Much of the discovery Liquidity needs to defeat summary judgment here was requested by Sandman, and for the foregoing reasons has not been provided.

23. Annexed hereto as Exhibit "11" are true and correct copies of printouts from the International Triathlon Union website.

24. Annexed hereto as Exhibit "12" is a true and correct copy of a printout from the Olympic.org Triathlon page.

25. Attached hereto as Exhibit "13" are true and correct copies of printouts from the websites for IRONMAN® and IRONMAN WORLD CHAMPIONSHIP®.

26. Attached hereto as Exhibit "14" is a true and correct copy of the printout from the USPTO for the mark "IRONMAN TRIATHLON WORLD CHAMPIONSHIP" Reg. No.: 1462281.

27. Attached hereto as Exhibit "15" is a true and correct copy of ITTF's Amended Counterclaims and Answer.

28. Attached hereto as Exhibit "16" is a true and correct copy of Universal Sports' website on the "Sports" page.

29.     Attached hereto as Exhibit "17" is a true and correct copy of a printout from the Merriam-Webster online dictionary for the definition of "Ping-Pong."

30.     Attached hereto as Exhibit "18" is a true and correct copy of the printout from the USPTO for the mark "USA TABLE TENNIS" Reg. No.: 1962515.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 26, 2012 in New York, New York.

*[signature]*

GARY ADELMAN, ESQ.