David W. Rivkin (dwrivkin@debevoise.com)
Jeremy Feigelson (jfeigelson@debevoise.com)
Charles W. Baxter (cwbaxter@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6230 (phone)
(212) 521-7230 (fax)

*Attorneys for Defendant and Counterclaim-Plaintiff*
*International Table Tennis Federation*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SANDMAN TABLE TENNIS, LLC,

    Plaintiff and Counterclaim-Defendant,

              v.

INTERNATIONAL TABLE TENNIS
FEDERATION,

    Defendant and Counterclaim-Plaintiff,

              v.

LIQUIDITY WORKS, INC.,

    Counterclaim-Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11 Civ. 1069 (KBF)

ECF Case

# **ITTF'S REPLY IN FURTHER SUPPORT OF SUMMARY JUDGMENT**

23640609v1

TABLE OF CONTENTS

Argument ............................................................................................................................2

I.   "WORLD CHAMPIONSHIP" PLAINLY IS AN ACTIONABLY FALSE
     DESCRIPTION OF SANDMAN'S UNSANCTIONED PRIVATE EVENT ........2

II.  "WORLD CHAMPIONSHIP OF PING PONG" INFRINGES ITTF's
     COMMON-LAW TRADEMARK RIGHTS IN "WORLD TABLE TENNIS
     CHAMPIONSHIPS"..............................................................................................4
     A.   ITTF's WORLD TABLE TENNIS CHAMPIONSHIPS Mark Is Fully
          Entitled To Legal Protection.....................................................................4
     B.   ITTF'S Use Of Its Mark In Commerce Is Beyond Dispute...............................5
     C.   There Is No Genuine Issue Of Material Fact As To Secondary Meaning.........7
     D.   The Likelihood Of Confusion Between WORLD CHAMPIONSHIP OF
          PING PONG And WORLD TABLE TENNIS CHAMPIONSHIPS
          Is Obvious ................................................................................................8

III. LIQUIDITY WORKS IS EQUALLY LIABLE UNDER THE
     LANHAM ACT......................................................................................................9

IV.  SANDMAN'S BREACH OF A CONTRACTUAL PROMISE TO CHANGE
     THE NAME OF ITS EVENT IS BEYOND DISPUTE ..........................................9

Conclusion ........................................................................................................................10

TABLE OF AUTHORITIES

**CASES**

*Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486 (2d Cir. 1988) ........................................8

*Buti v. Impressa Perosa, S.R.L.*, 139 F.3d 98 (2d Cir. 1998) ............................................................6

*Cable News Network L.P. v. CNNews.com*, 177 F. Supp. 2d 506 (E.D. Va. 2001)
  *vacated in part on different grounds*, 56 Fed. Appx. 599 (4th Cir. 2003)................................5

*Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217 (2d Cir. 1987) ........................7

*Chum Ltd. v. Lisowski*, 198 F. Supp. 2d 530 (S.D.N.Y. 2002) .........................................................7

*Gurary v. Winehouse*, 190 F.3d 37 (2d Cir. 1999) ...........................................................................1

*Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a
  Manaco*, 329 F.3d 359 (4th Cir. 2003) .......................................................................................6

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458 (2d Cir.
  2010) ........................................................................................................................................10

*McDonald's Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268 (S.D.N.Y. 1986) ...................................5

*Michels v. United States Olympic Committee*, 741 F.2d 155 (7th Cir.1984)................................10

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. The Stroh Cos.*, 265 F.3d 97 (2d Cir.
  2001) ..........................................................................................................................................2

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305
  (S.D.N.Y. 2010)..........................................................................................................................7

*Tennenbaum Capital Partners LLC v. Kennedy*, No. 07 Civ. 9695 (LTS)(DCF),
  2009 WL 2913679 (S.D.N.Y. Sept. 11, 2009)............................................................................2

*United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86 (2d
  Cir. 1997) ...................................................................................................................................6

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 56(d)..............................................................................................1

MCCARTHY ON TRADEMARKS § 18.52...............................................................................................6

MCCARTHY ON TRADEMARKS § 23.61...............................................................................................5

The evidence submitted with its moving papers shows conclusively that the International Table Tennis Federation ("ITTF") has promoted the WORLD TABLE TENNIS CHAMPIONSHIPS continuously and exclusively for more than 70 years, consistent with its recognized role as the sport's international governing body; that Sandman Table Tennis, LLC ("Sandman") chose to market a new, unsanctioned event using a name, WORLD CHAMPIONSHIP OF PING PONG, that was both inherently deceptive, in violation of the Lanham Act's prohibitions against false advertising, and obviously confusing, in violation of the Act's prohibitions against trademark infringement; and that Sandman breached a contractual promise to change the name of its event.  The summary judgment standard – the absence of any genuine dispute of material fact – is amply satisfied here.

In response Sandman fails to articulate – as it must under Fed. R. Civ. P. 56(d) – exactly how discovery, when added to the ample record offered by ITTF in support of this motion, would give it any reasonable prospect of success.  The question is not what information Sandman might seek or obtain in discovery, but whether it has identified now any information without which "for *specified reasons*, it cannot present facts *essential* to justify its [summary judgment] opposition."  Fed. R. Civ. P. 56(d) (emphasis added).  Sandman has not done so.  Leaving aside that Sandman has made little effort to pursue discovery (Reply Declaration of Charles W. Baxter (Apr. 9, 2012) ("Baxter Reply Decl.") ¶ 2, 3), it simply has not shown, as it must, exactly how further discovery can be reasonably expected to create a genuine issue of material fact.  *See Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (to resist summary judgment on the basis of the need for discovery, a party must submit an independent affidavit "showing," in relevant part, "(1) what facts are sought and how they are to be obtained, [and] (2) how those facts are

reasonably expected to create a genuine issue of material fact"). For Sandman to merely list issues and cite its voluminous discovery requests is legally insufficient. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. The Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001) (additional discovery is properly denied under Rule 56(d) where the request is "based on speculation as to what potentially could be discovered"); *Tennenbaum Capital Partners LLC v. Kennedy*, No. 07 Civ. 9695 (LTS)(DCF), 2009 WL 2913679 at *6 (S.D.N.Y. Sept. 11, 2009) ("Defendant proffers no good faith basis for belief that discovery would produce any information contrary to Plaintiff's declarations and the Court will not permit Defendant to engage in a fishing expedition based on mere speculation."). Sandman fails to justify its proposed fishing expedition here.

## Argument

### I. "WORLD CHAMPIONSHIP" PLAINLY IS AN ACTIONABLY FALSE DESCRIPTION OF SANDMAN'S UNSANCTIONED PRIVATE EVENT

Sandman's use of "world championship" as the name for its event is quite simply false, and therefore a violation of the Lanham Act. ITTF has demonstrated beyond question its status as the international governing body for the sport of table tennis for nearly a century (Declaration of Adham Sharara (Oct. 31, 2011) ("Sharara Decl.") ¶ 2) and its role as sole organizer of the WORLD TABLE TENNIS CHAMPIONSHIPS continuously and exclusively since 1938. *Id*. ¶ 10, Ex. D-H. ITTF also has demonstrated that, within the Olympic system, the term "world championship" refers to the premier non-Olympic event organized by the sport's international governing body – a point proven by citation to dozens of Olympic sports. *Id*. Ex. N. Sandman itself is nothing more than a private operator with no recognition by any sporting organizations of any kind. Particularly in the context of an established sport with decades of Olympic and

23640609v1

WORLD CHAMPIONSHIP tradition, it is plainly false for this new private commercial entity to self-style its event a "world championship."

Sandman (full name, Sandman *Table Tennis*, LLC, emphasis added) cannot plausibly maintain that its use of "ping pong" was not intended to – or does not as a matter of fact – associate its event with the sport of table tennis.  Sandman's own persistent use of the term "ping pong" as a synonym for "table tennis" precludes it from arguing now either that it intended to note such a distinction or that today's consumers can be expected to do so.  Declaration of Charles W. Baxter (Oct. 31, 2011) ("Baxter Decl.") Ex. A at ¶¶ 1, 2, 4, 12, 13, 15, 17, 38, Ex. B-D.  Indeed, ITTF has thoroughly shown that the general public uses the terms interchangeably (*Id*. Ex. E-J; Sharara Decl. ¶ 9 & n.1, Ex. B, C; Declaration of Michael D. Cavanaugh (Oct. 31, 2011) ("USATT Decl.") ¶ 9) in just the way Sandman has done repeatedly prior to adopting its new unsupportable litigation position.  Sandman provides no evidence to even suggest that the fact that the term "Ping-Pong" was registered at the turn of the last century has any relevance whatsoever to the term's contemporary usage.  Sandman's argument that it uses hard-surface rackets is irrelevant in light of this evidence of usage.  It should also be noted that the use of hard-surface rackets is not – and is not even argued by Sandman to be – a generally recognized distinction between "ping pong" and "table tennis."  Rather, it is simply a straw that Sandman is grasping at in the context of this litigation.

The dozens of examples of other "world championship" events cited by ITTF are hardly undercut by Sandman's single citation to World Triathlon Corporation's ("WTC") IRONMAN events, an example that actually confirms ITTF's point.  Unlike Sandman, WTC did not simply decide to host a world championship in an existing Olympic sport, much less one with a

3

preexisting world championship event boasting a 70-year tradition. Fully consistent with the international convention outlined in ITTF's papers, the International Triathlon Union, like ITTF, has organized and sanctioned the sole "world championship" event for Olympic-distance triathlon since its founding. Declaration of Gary Adelman (Mar. 26, 2012) ("Adelman Decl.") Ex. 11, 13, 14). The event staged under the now well-known IRONMAN mark actually predates the Olympic event, and is a fundamentally different event run at the distinctive "Ironman" distance. *Id*.

Sandman's argument that its tournament was a true world championship featuring "the best of the best" (Declaration of Jeffrey Bogatin (Mar. 26, 2012) ("Bogatin Decl.") ¶ 7) is neither factually supportable nor legally relevant. Not only has ITTF shown that its tournaments feature the world's best players while Sandman's did not (*see* record citations in ITTF's Memorandum of Law in Support of its Motion for Summary Judgment ("ITTF Br.") at 9, 17-19 & n.2), but it is beyond dispute that ITTF's event is an actual world championship – that is, an event recognized as such by the Olympic authorities and by the international sporting community – while Sandman's event is something it made up.

## II.  "WORLD CHAMPIONSHIP OF PING PONG" INFRINGES ITTF's COMMON-LAW TRADEMARK RIGHTS IN "WORLD TABLE TENNIS CHAMPIONSHIPS"

### A.  ITTF's WORLD TABLE TENNIS CHAMPIONSHIPS Mark Is Fully Entitled To Legal Protection

ITTF's robust common-law rights in its WORLD TABLE TENNIS CHAMPIONSHIP mark are strengthened – not as Sandman argues, made less secure – by the fact that ITTF sponsors events under several variants of the WORLD CHAMPIONSHIP name. *See*

4

MCCARTHY ON TRADEMARKS § 23.61 ("Even though a junior user's mark may not be that close to any one member of the family, it may have used the distinguishing family 'surname' or characteristic so as to be likely to cause confusion."); *McDonald's Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268 (S.D.N.Y. 1986) (use of "Mc" prefix infringed McDonald's family of marks even without specific trademark rights in "Mc" or "McBagel").  The fact that ITTF has, through great effort over many years, developed a portfolio of related tournaments to promote the sport of table tennis among different types of athletes is hardly evidence against its rights in the title of its premier event.  ITTF has been clear about the rights it is seeking to protect.  ITTF Br. at 5 n.1.  In any event, it is ITTF's core mark – WORLD TABLE TENNIS CHAMPIONSHIP – that is at issue here, and that mark is clearly infringed.

    **B.    ITTF'S Use Of Its Mark In Commerce Is Beyond Dispute**

    ITTF has shown pervasive use of its marks in commerce.  *See* Sharara Decl. ¶¶ 11-16; USATT Decl. ¶¶ 5, 6.  Sandman's assertion that ITTF has not used its mark "in commerce *in* the United States" (Memorandum of Law in Opposition to ITTF's Motion for Summary Judgment ("Opposition") at 6) (emphasis added) overlooks the applicable facts and misinterprets the applicable law.

    It is undisputed that ITTF operates a full-service English-language website, including updated news, highlights, and historical information regarding the WORLD TABLE TENNIS CHAMPIONSHIPS, delivered directly to consumers in the United States.  Sharara Decl. ¶ 11, Ex. J; *Cable News Network L.P. v. CNNews.com*, 177 F. Supp. 2d 506, 517 (E.D. Va. 2001) *vacated in part on different grounds*, 56 Fed. Appx. 599 (4th Cir. 2003) ("provision of news and information services on the Internet constitutes 'commerce' under the [Lanham] Act").  ITTF

5

23640609v1

licenses the broadcast of the WORLD TABLE TENNIS CHAMPIONSHIPS in the United States by virtue of a cable television distribution contract.  Sharara Decl. ¶ 13; MCCARTHY ON TRADEMARKS § 18.52 ("A licensee's use inures to the benefit of the licensor-owner of the mark . . . .").  ITTF provides coordination and assistance regarding the WORLD TABLE TENNIS CHAMPIONSHIPS to its U.S. member organization, USATT, and to U.S. players in the United States.  Sharara Decl. ¶ 16; *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 89-90 (2d Cir. 1997) (non-profit organizational activities constitute protected "services" under Lanham Act).  ITTF organized and held one of its portfolio of WORLD CHAMPIONSHIP tournaments in Palo Alto, California in 2007.  Sharara Decl. ¶ 16, Ex. Q.

      Besides ignoring these facts or trying to belittle them (notably, saying without legal or logical support that the U.S. broadcast of ITTF's WORLD CHAMPIONSHIP event is "unimportant" (Opposition at 15)), Sandman relies on the inapposite case of *Buti v. Impressa Perosa, S.R.L.*, 139 F.3d 98 (2d Cir. 1998).  The issue framed in *Buti* was whether "mere advertising" by a foreign mark holder constituted use in the United States (*id*. at 103) and the wide range of undisputed uses of the mark by ITTF in this country constitutes far more than mere advertising.  Also central to the decision in *Buti* was that the non-U.S. entity disclaimed participation in foreign commerce with the United States.  *Id*. (expressly declining to extend its analysis to foreign commerce with the United States by highlighting that the Italian plaintiff made the "***pivotal concession***[ ], . . . [that its] food and drink services . . . form no part of the trade between Italy and the United States.") (emphasis added).  ITTF makes no such concession – just the opposite.  *See Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Manaco*, 329 F.3d 359, 381 (4th Cir. 2003) (Lanham Act protections attach when

6

services are rendered outside the United States in foreign commerce with United States consumers). Commerce with and in the United States is core to ITTF's work.

### C. There Is No Genuine Issue Of Material Fact As To Secondary Meaning

ITTF has shown secondary meaning in its WORLD TABLE TENNIS CHAMPIONSHIPS mark with undisputed evidence including 70 years of exclusive use, Sharara Decl. ¶ Ex. D-H; substantial advertising expenditures, *id*. ¶¶ 13, 15, Ex. P; the event's growth and success over seven decades, *id*. ¶ 6, 10, 13, Ex. D-H; and unsolicited media coverage, *id*. Ex. K, M; Baxter Decl. Ex. K. Sandman's repeated argument that this evidence of secondary meaning fails to "correlate ITTF's alleged marks with ITTF as a source" (*see* Opposition at 14, 15, 17) misses the mark as a matter of law. *See Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1221-22 (2d Cir. 1987) (secondary meaning entails that a "substantial segment" of "the purchasing public associates goods designated by a particular mark with but a ***single—although anonymous***—source") (emphasis added). No genuine issue of material fact therefore has been or can be demonstrated to exist on this issue.

Further, Sandman fails to even address ITTF's evidence of 70 years of exclusive use of the WTTC mark. Sandman's own cited authority indicates that evidence of 10 years of exclusive use "compels" a finding of secondary meaning (*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp.2d 305, 315 (S.D.N.Y. 2010) cited in Opposition at 6). Sandman's attempt to discount ITTF's contract to televise the WORLD TABLE TENNIS CHAMPIONSHIPS in the United States is "unimportant" (Opposition at 15) is belied by its own citation to *Chum Ltd. v. Lisowski*, 198 F. Supp. 2d 530, 535-36 (S.D.N.Y. 2002), where the court found that evidence of televised broadcast supported a finding of secondary meaning. The very

quotations selected by Sandman from ITTF's showing of media coverage reference ITTF's event as "the" world championship event, not – as Sandman would have it "a" world championship. Opposition at 11.  As to plagiarism, Mr. Bogatin's conclusory assertion that "Sandman was unaware of ITTF when it chose the name" for its event (Bogatin Decl. ¶ 3; Opposition at 16) cannot create an issue of fact in light of the evidence in the record that before and during its event, Sandman was well aware of the sport's pre-existing "world championship" event even if Sandman was not conscientious enough to examine who organized it.  ITTF Br. at 12-13; Baxter Decl. Ex. B, D, L.

    **D.**    **The Likelihood Of Confusion Between WORLD CHAMPIONSHIP OF PING PONG And WORLD TABLE TENNIS CHAMPIONSHIPS Is Obvious**

        This Court is fully empowered, on the basis of the ample evidence, legal authority and common sense, to conclude that Sandman's substantively identical mark is obviously likely to confuse.  The parties agree that the Court's assessment of the "overall impression" of the marks is the proper focus of an analysis of similarity between marks, and under this standard no genuine issue of material fact exists.  *See Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 492 (2d Cir. 1988) (affirming finding of similarity in overall impression without evidence beyond the marks themselves) (cited in Opposition at 18).  Sandman's assertion that its use of the term "ping pong" in the place of "table tennis" makes its mark "wholly different" (Opposition at 18) is meritless given that Sandman itself has consistently ignored the asserted difference in its own promotion of its event.

        It bears mention that Sandman's taking a license for "ping pong" is hardly evidence of its good faith (Opposition at 20); it entered into that license only after being sued here in the

Southern District by the holder of the purported mark, SOP Services, Inc.  Baxter Reply Decl. Ex. M, N.  In that litigation, Judge Gardephe *sua sponte* invited briefing on whether "Ping Pong" is a protectable mark.  *Id*. Ex. N.

Sandman's conclusory assertions regarding proximity of competition, evidence of actual confusion, inferiority of its event, and the sophistication of buyers are well-addressed by ITTF's original moving papers.  ITTF's analogous state law unfair competition claims likewise are well-supported by the moving papers.

### III.   LIQUIDITY WORKS IS EQUALLY LIABLE UNDER THE LANHAM ACT

Liquidity Works' sole response to the evidence of its involvement is to throw an intern under the proverbial bus, asserting that the intern had no right to associate Liquidity Works with the unlawful "World Championship" event.  This careful non-denial creates no genuine issue of material fact.  Liquidity Works conspicuously stops short of saying that it was actually not involved.

### IV.   SANDMAN'S BREACH OF A CONTRACTUAL PROMISE TO CHANGE THE NAME OF ITS EVENT IS BEYOND DISPUTE

The breach of contract could hardly be clearer.  The record shows that Sandman made the following unlimited offer to ITTF: "In order to procede [sic] with the Event at this late date and in hopes to work together in the Future we can call the event International classic ping pong championship."  Sharara Decl., Ex. V.  ITTF accepted this offer (*id*.), not the earlier, less definite offer that Mr. Bogatin references in his declaration (Bogatin Decl. ¶ 18).

Sandman does not dispute that the exchange of emails constituted a contract with ITTF.  Instead, Sandman argues that the contract was limited by the private intentions of Mr. Bogatin –

9

citing language in a prior, rejected offer. *See Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466-67 (2d Cir. 2010) (private evidence of what a party "really intended" cannot contradict written contract terms). The operative contract language that was actually accepted by ITTF came in the later email excerpted above. That language was unlimited, and there can be no serious argument that the contract contained the unstated limitations purportedly harbored by Mr. Bogatin.

In its moving papers ITTF carefully demonstrated the lack of merit to Sandman's assertion of the extraordinary defense of "duress." Sandman cites not a single case in response, and Mr. Bogatin's version of the facts – even if accepted – is insufficient under the law. Similarly, Sandman's request for injunctive relief regarding ITTF's interactions with and eligibility requirements for players in international competition is equally unsupported. Sandman fundamentally misunderstands ITTF's role; ITTF can sanction an event but each of the 217 national associations is responsible for selecting and entering that nation's players for any international competition. *See Michels v. United States Olympic Committee*, 741 F.2d 155, 159 (7th Cir.1984) ("[T]here can be few less suitable bodies than the federal courts for determining the eligibility, or procedures for determining the eligibility, of athletes to participate in the Olympic Games.") (Posner, J., concurring); Sharara Decl. ¶¶ 17-20, Ex. A, ¶¶ 3.7.3, 4.1.5. Irrespective of any Lanham Act concerns, this relief should be rejected.

## Conclusion

For the foregoing reasons, ITTF respectfully requests that this Court enter summary judgment and the other relief requested in ITTF's moving papers.

[signature page follows]

| | |
|---|---|
| Dated: April 9, 2012<br>New York, New York | Respectfully submitted,<br><br>DEBEVOISE & PLIMPTON LLP<br><br>By: <u>s/Charles W. Baxter</u><br>    David W. Rivkin<br>    (dwrivkin@debevoise.com)<br>    Jeremy Feigelson<br>    (jfeigelson@debevoise.com)<br>    Charles W. Baxter<br>    (cwbaxter@debevoise.com)<br>919 Third Avenue<br>New York, New York 10022<br>(212) 909-6230 (phone)<br>(212) 521-7230 (fax)<br><br>*Attorneys for Defendant and Counterclaim-Plaintiff International Table Tennis Federation* |